Crawford v. Willing.

*Lewis*, for the defendant, admitted, that in a common-law court in England, the plea would be bad ; but he insisted, that any plea, which contained matter proper for a bill in equity there, would here be sustained in a court of common law, from the necessity produced by the want of a court of equity. If, therefore, the award is bad on the face of it, the form of the plea is immaterial. And it has been decided in Pennsylvania, that an award is not good, unless it determines the whole matter in dispute and submitted ; nor if it exceeds the subject submitted, unless the excess can be separated and rejected ; nor if it decides matters submitted on one side, without deciding the matters submitted on on the other side. (*Huff* v. *Parker*, Com. Pleas Phila.; removed into the supreme court by writ of error, April 1787.)[1] If, in short, the arbitrators mistake in a plain point of law, their award ought to be set aside. (3 P. Wms. 362 ; 3 Atk. 486, 494, 529.) And in the present instance, the allowance of interest on the one side, and the rejection of it upon the other, is a plain error in law and justice.

*Rawle*, in reply, having cited 1 Burr. 277, was stopped by the court.

*286]    *DECEMBER TERM, 1803.

CRAWFORD *et al.* v. WILLING *et al.*

*Interest.—Partners.*

Interest is due on the ascertained balance of an account, from the time of a demand of payment.

In case of a war, the payment of interest on a debt due by a citizen of a belligerent country to one of a neutral state, will be enforced, unless a remittance cannot be made with safety.

A partner is liable for the acts of his copartner, in relation to partnership business, whether they be known to the former or not.

THIS was an action of account-render, brought by Crawford & Co., of Rotterdam, against Willing & Morris, of Philadelphia. There was a judgment *quod computent*, under which, the auditors reported, "that the sum of 1658*l.* 11*s.* 8*d.*, Pennsylvania currency, is due from the defendants to the plaintiffs, but not being agreed, with respect to an allowance of interest, they submit that point to the court." The plaintiffs thereupon filed a suggestion, " that the defendants ought to be charged 3770*l.* 15*s.*, for interest on the several sums of money by them accounted for, in their account, mentioned in the report of the auditors ; and that the plaintiffs are entitled

[1] Cited, 3 Yeates 567.

Crawford v. Willing.

to have and recover from the defendants the said sum of 3770*l.* 15*s.*, as well as the principal." To this suggestion, the defendants pleaded: 1st. "That they ought not to be charged with the said sum of 3770*l.* 15*s.* for interest, &c., and that the plaintiffs are not justly entitled to have and recover the same, &c,' because they say, that the same, or any part thereof, is not justly due from the defendants to the plaintiffs : and this they pray may be inquired, &c." 2d. Payment of the principal sum.   3d. The bankruptcy and certificate of Morris, one of the defendants. Issue was joined on the first plea ; and the second and third were confessed.

On the evidence, it appeared, that the transactions on which the debt to the plaintiffs was founded, occurred before the year 1775 ; that during the years 1775 and 1776, and during several years after the war, the debt was repeatedly acknowledged, and a remittance of the amount promised, in a correspondence between the plaintiffs and Morris, as the acting partner of the defendants ; *that the partnership commenced, by articles dated [*287 the 1st of January 1773, and continued for five years ; that the partnership was renewed, taking Swanwick in as a partner, in the year 1783 ; that partial remittances were made by Morris, in the year 1786, which reduced the balance of the principal sum to the amount reported by the auditors ; and that Willing never knew of the plaintiffs' demand, until the present suit was amicably instituted, by agreement with Morris alone, dated the 4th of August 1798.

*E. Tilghman* and *Ingersoll*, for the plaintiffs, proposed to inquire, 1st. Whether, considered as a commercial case, generally, it is not a case in which interest ought to be allowed ? 2d. Whether the special circumstances of the case exclude the claim of interest, with reference to the law of partnership ? 3d. Whether the case is affected by the existence and operation of the revolutionary war ?

1. It is true, that, in the old books, the claim of interest upon simple-contract debts, is treated with great rigor, and allowed only in the case of a note ; but the law, gradually accommodating itself to common sense and common honesty, is at length settled, that for money lent ; for liquidated balances ; nay, for goods sold and delivered, where the usual credit is expired ; for money detained, which ought to be paid over, and during the continuance, as well as before the commencement of a suit ; the creditor shall be entitled to interest.   1 Dall. 349 ; 1 Ves. Sen. 63 ; Rep. temp. Hardw. (Ridgeway) 286 ; 1 Ves. 310 ; 3 Bro. Ch. 436 ; Doug. 361.   And under circumstances of vexatious delay, interest may be recovered, even beyond the amount of the principal.   Atk. 80 ; 2 Ves. jr., 300. (*a*)

2. The debt was contracted, the correspondence was carried on, during the existence of the partnership, between Willing and Morris. Each partner was, therefore, liable, not as a surety, but as a principal, for the lawful contracts and transactions of the other, in relation to their joint business. 1 Wils. 682 ; 3 Ves. 277 ; Bankrupt Act of Congress, § 34 ; Doug. 629.

3. The courts of Pennsylvania (differing in their view of the subject from the federal courts) have made an abatement of interest, during the continuance of the revolutionary war (a period computed at seven years and a

(*a*) 1 Dall. 265, note ; Id. 288, note ; 2 Dall. 104, note.

Crawford v. Willing.

half), in suits brought by British creditors against American citizens, the immediate parties in the war; but there is neither law, justice nor precedent in any court, for applying the rule to suits brought by the citizens of a neutral or friendly nation : And as to the practicability, as well as the lawfulness, of a remittance, it is notorious, that the intercourse between the United States and Holland was never suspended, at any period of the contest.

*288]  *Lewis*, for the defendants, stated his general position to be, that interest is not due, of course, upon an account-current; or an unliquidated *debt. 1 Wils. 376 ; 3 Ibid. 205 ; 1 Dall. 349 ; Doug. 361 ; 1 Dall. 265 ; 3 Ibid. 313 ; 1 P. Wms. 376 ; 3 Ibid. 205 ; Doug. 361 ; *Durdon* v. *Gaskill ;*[1] and that the peculiar circumstances of the present case will not warrant a departure from the general rule.  The cases cited for the plaintiffs are, indeed, inapplicable to the real point at issue.  Thus, 1 Dall. 349, was the case of a single sum of money, received at one time, by the defendant, from the plaintiff's agent ; not the case of an open running account. The cases in 1 Ves. 63, and Ridgw. 286, go no further than to show, that when a sum is ascertained to be due, by settlement, or liquidation of accounts, interest begins to run.  The case in 1 Ves. 310, contains, indeed, the strong expression, that interest follows the principal, as a shadow does the substance ; but the expression must be applied to the subject before the court: which was a legacy for the education of a child, bearing interest, from the very nature of the bequest.  And the case in 1 Wils. 682, arose upon a joint and several bond.

To the general position, however, that interest is not payable, in cases of account-current, and other simple contract-debts, *Lewis* admitted there were various exceptions : 1st.  Where there is an express contract to pay interest. 2d.  Where the accounts have been settled, and a liquidated balance ascertained.   3d.  Where a debt consists of a single sum of money, and no account-current has been raised between the creditor and debtor.   4th. Where there has been an unreasonable detention of money, after a demand of payment, or a refusal to come to a settlement.   But he insisted, that there was no authority, in any case, to justify a verdict for interest, beyond the amount of the principal ; not even upon a bond, if the creditor has neglected to demand payment for several years.   14 Vin. Abr. 460.

But, adverting to the peculiar circumstances of the case, *Lewis* contended: 1st.  That there was a wide distinction between the responsibility of Morris and that of Willing : the correspondence being exclusively with the former, and no demand of payment, no notice of the claim, to the latter, until 1798, long after the dissolution of the partnership.   The act or assumption of one partner, to bind the company, must take place during the continuance of the partnership ; and here, the only promise made by Morris, during the partnership, was in the year 1775 ; before the money was received, and merely importing that the defendants would remit it, when it was collected ; which, surely, is no foundation for the charge of interest.   3 Bac. Abr. 517 ; 2 Ventr. 151.   So far, therefore, as respects Willing, it is a stale demand, against which every presumption will be made.   Cowp. 215 ; 1 Wils. 742 ;.

---

[1] Reported 2 Yeates 268.

1 Atk. 493 ; Gilb. Eq. 224. 2d. That the operations of the war, and the high state of exchange, afford a justification for not remitting until the peace of 1783 ; and after that epoch, no demand was made upon Willing, until the suit was brought.

*BY THE COURT. (a)—The auditors have ascertained the principal [*289 sum that is due from the defendants to the plaintiffs ; leaving to the court the question of interest. The only point now to be decided, therefore, is, whether any, and what interest, ought to be paid upon the debt so ascertained ?

The inquiry has been naturally and fairly pursued, under the considerations suggested at the bar : 1st. Whether, on general principles, it is a case in which interest can be allowed ? 2d. Whether any circumstances, peculiar to the case, in relation to the parties, should prevent the allowance of interest here, in opposition to a general rule ? 3d. Whether the effect of the revolutionary war was such, as to suspend the right to interest, for any, and for what, period ?

1. Whatever may have been the doctrine in former times, we have traced, with pleasure, the progress of improvement upon the subject of interest, to the honest and rational rule, that, wherever one man retains the money of another, against his declared will, the legal compensation for the use of money, shall be charged and allowed. From the single case of a promissory note, the instances, in which interest is allowed, have been so multiplied, year after year, that few remain to be added to the legal catalogue. In Pennsylvania, the policy is older, and still, perhaps, more extensive, than it is in England. There, even at this day, an action must be brought upon a judgment, in order to recover interest upon it ; but here, our act of assembly, so early as the year 1715, made the interest an inseparable incident of the judgment. For my own part, I am prepared to say, with the book cited, that interest ought to follow a debt, as the shadow does its substance. Even, in the case of goods sold and delivered, I would think it right to allow interest, as soon as the express or the implied term of credit had elapsed, and a demand of payment was made. (b)

In the present action, there can be no doubt, that the balance had long been ascertained and acknowledged. In England, it is the practice of merchants to balance their accounts annually ; and by that means, the interest of each year becomes principal, in the new account of the succeeding year. Without adopting that practice, it is clearly our opinion, that the defendants are liable for the interest actually claimed, unless some special reason exempts them from the general obligation of merchants.

*2. The circumstances suggested, to distinguish the responsibility [*290 of Mr. Willing from that of his partner, are not a sufficient legal or equitable answer to the demand of the plaintiffs. In Watson's treatise on the Law of Partnership, the cases on this point are collected and arranged.

---

(a) This cause was tried before SMITH and BRACKENRIDGE, Justices; the Chief Justice declining to sit on account of his relationship to Mr. Willing; and YEATES, Justice, being absent on account of indisposition. The charge was delivered by Judge SMITH.

(b) In the course of the trial, SMITH, Justice, declared, that the authority of 1 Dall. 265 (laying down the rule, that interest was not payable for goods sold and delivered), had been often overruled

The result of the whole is, that during the partnership, all the partners are answerable for the acts of each. It is no ground of discrimination in this respect, which partner actually received the funds; which was intrusted to transact the business, or which was ignorant of the state of the debit and credit of the company books. If, indeed, a public notice is given by one partner of the dissolution of a partnership; and creditors, unreasonably neglecting it, will place funds in the hands of the other partner, they must take the consequence of their own imprudence. But the present case is free from every embarrassment of this kind. The debt was contracted during the partnership; and all that was written about it, both before, and after, the termination of the partnership, was written by Mr. Morris alone, without any objection on the part of Mr. Willing; whose conduct, on the contrary, gave reason to presume consent and approbation.

3. Nor will the effect of the revolutionary war, furnish the defendants with a justification or excuse against the claim of interest. We all know the eminent services of Mr. Morris to his country; and the pre-eminent credit of the house of Willing & Morris, throughout the war. But these very advantages show, that the defendants, of all men, had it in their power to remit the funds, for the payment of their debts due in neutral countries.

This, then, is our general position : the defendants are liable for the payment of interest, from the time the money was in their hands, demanded, and neglected to be paid, until the war; during the war, if remittances could safely be made; and (if they could not be safely made during the war) then, from the peace of 1783, until the actual recovery of the principal.

Unless, upon the whole, the jury can discover some ground of excuse, which we have not been able to trace, the interest ought to be allowed, in justice to the plaintiffs : and we will add, in justice to the commercial character of our country.

The jury found a verdict for the plaintiff, for $4422.89.(a)

---

(b) This sum, it is plain, was not equal to one-half the interest claimed (and the calculation of interest was in a mode favorable to the defendants), but it was exactly equal to the principal sum reported by the auditors. It is presumed, therefore, that the jury though: the interest ought not to be allowed beyond the principal.

(a) s. c. 1 Binn. 64, which is a much better report of the case.